2022 IL App (1st) 201120-U

SIXTH DIVISION
March 18, 2022

Nos. 1-20-1120 & 1-21-0107 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| *In re* THE MARRIAGE OF: | ) |
| | ) Appeal from the |
| RAYMOND E. CLUTTS, | ) Circuit Court of |
| | ) Cook County. |
| Petitioner and Counter-Respondent-Appellant, | ) |
| | ) |
| and | ) No. 11 D 3324 |
| | ) |
| DEANNA CLUTTS, | ) |
| | ) |
| Respondent and Counter-Petitioner, | ) The Honorable |
| | ) Jeanne Cleveland Bernstein, |
| (Neal H. Levin, Solely as the Receiver of Raymond E. | ) Judge Presiding. |
| Clutts, P.C., Receiver-Appellee). | ) |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Pierce and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's grant of the receiver's final fee petition is reversed and remanded for the circuit court to consider whether the failure to acquire jurisdiction over the corporations placed in receivership requires vacating the receivership entirely because of the absence of necessary parties. If the receivership is allowed to stand, the circuit court must determine when Mr. Clutts had notice of the receivership and reduce the fee award for any work done or costs accrued before that time. In addressing the receiver's request for fees or costs accrued after that time, the court is to consider and rule on the objections made by Mr. Clutts as to the conduct of

and fees charged by the receiver and his request for discovery relative to those issues.

¶ 2 The petitioner in this case, Raymond E. Clutts, initiated a dissolution of marriage proceeding against respondent Deanna Clutts. In November 2014, Mrs. Clutts requested, through her counsel, and was granted the appointment of a receiver over Mr. Clutts's businesses. In 2019, the receiver filed his final report and fee petition, requesting court approval for a total of $922,009.69 in fees and costs and judgment against Mr. Clutts personally for the $785,009.69 of that amount that the receiver had not yet been paid. In response, Mr. Clutts, a former lawyer representing himself *pro se*, filed a motion to file a special and limited appearance on the basis that the circuit court lacked the necessary personal jurisdiction over him and his businesses to enter the receivership orders. As part of Mr. Clutts's jurisdictional argument, he contended that he did not receive appropriate notice of much of the receivership proceedings. Mr. Clutts advised the court in his memorandum that he had numerous objections to the substance of the receiver's fee petition but that he reserved those in the event the court found that it did have jurisdiction over him and his companies. The circuit court entered one order on September 16, 2020, that found jurisdiction to be proper and granted the receiver's fee petition. The court entered a judgment against Mr. Clutts personally in the amount of $785,009.69.

¶ 3 In a motion to reconsider, Mr. Clutts set forth several arguments about the substance of the receiver's fee petition, including that the actions taken and fees charged by the receiver were unreasonable and that he was entitled to discovery on the matter. Mr. Clutts also filed a notice of appeal on the same day appealing the judgment that had been entered. The circuit court judge, stating that she lacked jurisdiction because a notice of appeal had been filed, refused to consider any arguments raised in the motion to reconsider.

¶ 4 On appeal, Mr. Clutts, continuing to represent himself *pro se*, argues (1) the court's finding

that it had jurisdiction over him and his corporations to impose a receivership was wrong, (2) the circuit court improperly rejected his argument that he lacked notice of the receivership proceedings and that discovery should have been provided regarding the lack of notice, and (3) the circuit court improperly refused to consider the arguments that he made in his motion to reconsider. He sets forth those arguments again on appeal. Reiterating an argument he made in his motion to reconsider, Mr. Clutts contends that , pursuant to Illinois Supreme Court Rule 776 (eff. Mar. 25, 1991), the receiver should have wound down the business and notified clients, rather than run this small collection law firm with lawyers from a large firm for five years, accruing almost a million dollars in fees. He questions whether certain fees charged were reasonable and whether there was a basis for assessing the receiver's fees against him, personally. He also argues that he was improperly denied discovery on the fees charged and actions taken by the receiver.

¶ 5    We reject Mr. Clutts's claim that the court lacked jurisdiction over him personally to impose a receivership as part of the divorce proceeding, as the court clearly had jurisdiction over all matters related to the dissolution of the Clutts's marriage. However, it is clear from the record that the corporate entities Mr. Clutts controlled were never served and no finding was ever made that would support a decision to disregard their corporate existence. While Mr. Clutts, who is no longer an attorney, may not represent the corporations directly, as a party he can raise the argument that they were necessary parties to this proceeding. We agree that they were. We therefore reverse and remand to allow the circuit court to determine, in the first instance, whether their absence voids the receivership proceedings. In the event that it does not, the court must determine when Mr. Clutts received notice of the receivership proceedings. For any period after such notice was provided, the court must consider the objections raised by Mr. Clutts and his request for discovery relative to the conduct of the receiver and the fees incurred.

¶ 6                                    I. BACKGROUND

¶ 7     Mr. and Mrs. Clutts were married on April 8, 1977, in Chicago, Illinois, and had two children during the course of their marriage.

¶ 8     On March 31, 2011, Mr. Clutts—through his attorneys Grant & Grant, P.C.—petitioned for the dissolution of his marriage to Mrs. Clutts. In his petition, Mr. Clutts stated that during the marriage "the parties acquired certain marital property including but not limited to: real estate, *** [and] businesses, *** the rights of which this Court should adjudicate." In addition to asking the court to dissolve their marriage, Mr. Clutts also asked it to determine the custody arrangements for their two children, allocate marital property, and determine the amount of support and maintenance to be paid to Mrs. Clutts.

¶ 9     On October 7, 2011, an additional appearance was entered on behalf of Mr. Clutts by Raymond E. Clutts, P.C. (Clutts, P.C.).

¶ 10    The law firm Swanson, Martin & Bell, LLP (Swanson), moved to substitute as counsel for Mr. Clutts, replacing Grant & Grant, P.C., and the court granted that substitution October 19, 2011.

¶ 11    The parties entered into a marital settlement agreement and custody judgment, and on October 10, 2013, the court entered a judgment of dissolution of marriage that incorporated the marriage settlement agreement by reference. The marriage settlement agreement is not included in the record on appeal, but in the judgment order, the court indicated that the agreement encompassed "the respective rights of each party in and to the property, income or estate, including a division of all marital and non-marital property." The court also stated in the judgment that it "expressly retain[ed] jurisdiction of this cause for the express purpose of enforcing all terms of this Judgment for Dissolution of Marriage and Joint Parenting Agreement, including all terms of the Marriage Settlement Agreement."

¶ 12    On November 7, 2014, Mr. Clutts, by his own admission in his opening brief on appeal, entered Mrs. Clutts's residence while armed with a pistol after consuming a large quantity of alcohol. After Mrs. Clutts and one of the children fled, and without knowing that the other child was asleep upstairs, Mr. Clutts acknowledges that he "inexcusably fired three shots into the kitchen floor." No one appears to have been harmed during this incident. After firing the shots, Mr. Clutts sat down in the driveway to wait for the police and was arrested "within minutes."

¶ 13    On November 13, 2014, Mrs. Clutts, through her counsel, filed a petition seeking a temporary restraining order (TRO), preliminary injunction, the "emergency appointment of a receiver" pursuant to section 2-415 of the Code of Civil Procedure (Code) (735 ILCS 5/2-415 (West 2014)), and for the establishment of a trust pursuant to section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (735 ILCS 5/503(g) (West 2014)) for the benefit of one of the children who had special needs. In the petition, Mrs. Clutts alleged that Mr. Clutts was the 100% owner of Clutts, P.C., that the firm had "historically been the sole source of income for [Mr. Clutts] from which to support the family," and that "[c]ounsel for [Mr. Clutts] stated that [Clutts, P.C.,] [wa]s laying off its employees after hearing about news of [Mr. Clutts's] criminal charges and the firm is uncertain as to what will happen with the practice." At that time, according to the petition, Mr. Clutts was more than $200,000 in arrearage on child support and other payments to Mrs. Clutts. Mrs. Clutts argued that the TRO, injunction, receivership, and trust were all necessary to protect her and the couple's children. As to the request for a receivership, Mrs. Clutts alleged that Mr. Clutts had "likely ended his ability to practice law and the future viability of [Clutts, P.C.,] [wa]s extremely doubtful." She argued that the firm needed to be shut down and liquidated or sold to a third party.

¶ 14    On November 14, 2014, the circuit court granted Mrs. Clutts's petition and appointed Neal

H. Levin of the law firm Freeborn & Peters, LLP, as the receiver of Clutts, P.C. The court stated that as receiver, Mr. Levin would "assume exclusive management and operation of" Clutts, P.C. The court made clear that the receivership was not made pursuant to Illinois Supreme Court Rule 776, which provides for appointment of a receiver where a lawyer is unable to continue to discharge his or her duties and provides that "the receiver shall normally serve without compensation." Ill. S. Ct. R. 776 (eff. Mar. 25, 1991). The court's November 14, 2014, order stated, however, that "the Receiver shall immediately take actions consistent with Supreme Court Rule 776(b) with respect to notice, representation, sequester and protections necessary to preserve the integrity of the matters of the clients of the Law Firm and shall have the benefit of Rule 776(d)." Subsection (d) of Rule 776 significantly limits any liability the receiver can have to clients or to the impacted lawyer. After listing specific powers that the receiver was granted, the court stated that the receiver "[wa]s entitled to compensation" for the services he would provide "at his standard hourly rate of $650/hour plus necessary costs" and that the receiver would also "be entitled to fees and costs associated with his pre-appointment investigation of Respondent Raymond E. Clutts and the Law Firm."

¶ 15    In a separate order entered the same day, the court noted that Mr. Clutts owed Swanson $38,592.74 for "past due" attorney fees and costs. It appears from the record that Swanson withdrew from representing Mr. Clutts at some point prior to this date, although there is no motion to withdraw included in the record. However, Clutts, P.C., was still the attorney of record for Mr. Clutts, and Ken Merlino, of Clutts, P.C., appeared for him on November 14, 2014. In this second order, the circuit court noted the following: "counsel for all parties appearing, counsel for Ray Clutts seeking leave to withdraw orally (and refraining from legal argument), Ray Clutts failing to appear for hearing and failing to respond to the pleadings, the court having conducted a hearing

\*\*\*." The court then gave Mr. Merlino leave to file a motion to withdraw from representing Mr. Clutts. No motion to withdraw was filed by Clutts, P.C., at that time.

¶ 16    There was a status hearing on December 3, 2014. The court order from that date noted that both the receiver and counsel for Mrs. Clutts were present. In that order, the court also expanded the receiver's authority "to allow him indefinite possession and control" of Mr. Clutts's other corporation, Systematic Medical Reimbursement, Inc. (SMR, Inc.). The court also stated that a copy of the order "shall be sent to Mr. Clutts at the Lake County Jail." No evidence of the order being sent to Mr. Clutts is included in the record on appeal.

¶ 17    On January 16, 2015, Mr. Levin filed a written motion on behalf of Clutts, P.C., to withdraw its representation of Mr. Clutts, as well as his first report and fee petition as receiver. The certificate of service for those filings stated that the receiver "certifie[d] that he caused a copy" of the filings to be served on Mr. Clutts "by U.S. Mail on January 16, 2015," at the Lake County Sheriff's Office.

¶ 18    According to Mr. Levin's first report, he "took control of the management and operation of" Clutts, P.C., to "preserve the going concern value of the estate." The receiver had sought to secure the facility upon possession, advise the staff about the receivership, "[s]ecure access to and an image of all Electronically Stored Data and computer networks, network servers, and email servers," assess the facility's condition, create a videotaped inventory of the facility, and assess the needs of the firm's clients. The receiver said these actions "required several personnel, including security, a computer forensic expert, and the Receiver's Partner and Intelligence Director." The receiver had then "actively operated and managed the Firm," hiring back five of its former employees as independent contractors. The receiver's intent at that time was to "transfer the Firm's business to a new law firm." The receiver further stated:

> "The Receiver is also exploring the possibility of placing the Firm into bankruptcy to effect an orderly liquidation of the Firm's assets. The Receiver has not yet made a decision on this course of action, though time is critical as the 'burn rate' for daily operations by the Receiver and his team is substantial, at times in excess of $6000/day."

The receiver anticipated "winding down th[e] Receivership within the next month."

¶ 19　According to the fee application, between November 12 and December 31, 2014, eight individuals worked on the receivership, including four partners and two associates from the receiver's law firm with hourly rates of between $325 and $650, an intelligence analyst billing at $285 per hour, and an intelligence director billing at $205 per hour. At the time of filing, these eight individuals had put in a total of 466.3 hours, the majority of which (257.4 hours) was attributable to a partner billing $500 per hour. The total the receiver sought in fees and costs at that time, from Mr. Clutts personally, was $223,422.17.

¶ 20　The court granted the motion for Clutts, P.C., to withdraw from its representation of Mr. Clutts on February 5, 2015. The order gave Mr. Clutts 21 days to file an appearance for new counsel or proceed *pro se*. That same day, the court also granted the receiver's fee application, entering judgment in favor of the receiver and against Mr. Clutts in the requested amount of $223,422.17. The court directed the receiver to "serve a copy of this order on Raymond E. Clutts at the Lake County Jail."

¶ 21　The following day, February 6, 2015, the receiver filed an affidavit of service. The certificate indicated that a copy of the order had been served on Mr. Clutts, through the Lake County Sheriff's Office, by U.S. Mail on February 6, 2015. The affidavit of service indicated that a notice of motion was served on Mr. Clutts personally at 9:35 a.m. on January 26, 2015, by a deputy at the Lake County Sheriff's Office. Also attached was a receipt from Lake County for $15,

dated January 27, 2015, and a letter, dated January 16, 2015, from Mr. Levin's office to the Lake County Sheriff's Office, Civil Process, enclosing the Clutts, P.C., motion to withdraw, the receiver's first report, and receiver's fee petition.

¶ 22    Another affidavit of service is included in the record, filed in the circuit court on February 20, 2015, from a deputy at the Lake County Sheriff's Office, indicating that a "summons" was served personally on Mr. Clutts at 9:30 a.m. on February 11, 2015. Another receipt from Lake County for the payment of $15 on February 17, 2015, was also attached.

¶ 23    On March 16, 2015, the receiver filed a motion for an expansion of his authority pursuant to sections 2-1402(c)(4) and 12-718 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402(c)(4), 12-718 (West 2014)). The certificate of service indicated that a copy of the motion would be served on Mr. Clutts "via personal service on or before 4:00 p.m. on March 18, 2015" through the Lake County Sheriff's Office. In the motion, the receiver asked to be given authority to "take possession, sell or otherwise dispose of real and personal property belonging to Mr. Clutts to satisfy outstanding liens and judgments as well as other claims owed by Mr. Clutts." The court granted the receiver's motion on March 20, 2015.

¶ 24    On May 27, 2015, just over six months after his appointment, the receiver filed his second report and fee application. The certificate of service indicated that the receiver caused a copy of the report and fee application to be served by U.S. mail to Mr. Clutts through the Lake County Sheriff's Office on May 27, 2015.

¶ 25    In the report, the receiver indicated he had continued to actively manage the firm's clients through March 2015 but had released the firm's former staff by the end of March 2015 because he was "forced to shift strategies towards the liquidation of the firm and the placement or return of thousands of client matters." All except five clients received their files back or had their files

transferred to new counsel, a process that, according to the receiver, was "quite daunting overall in light of the need to reconcile all matters and billings as well as gather[ ] and transfer[ ] thousands of digital and hard files." The receiver had closed down the firm's office and vacated the premises by the end of April 2015. The receiver represented to the court that he and his team had "operated the Firm (at a much more efficient level than previously), preserving its value as well as the integrity of client matters and HIPPA compliance." The receiver then stated:

"While the objectives of the Receivership were met, *to wit*, preserving the *status quo* and tending to the pending client matters, the conclusion of the business operations has resulted in little residual value to the parties to this proceeding. The Receiver is now in the process of preparing Mr. Clutts's personal residence for sale. The property is subject to outstanding homeowners' association fees, a primary mortgage, and a business loan."

"In short," the receiver concluded:

"it is apparent that the Estate was worthless upon the appointment of the Receiver. There is effectively no value left in the Estate that is not otherwise to inure to the benefit of the lender and certain administrative claimants and other creditors. The Receiver did, however, ensure that a check that had been drawn to Mrs. Clutts prior to the Receivership, which had been unpaid due to the lender's offset of the operating account, was, in fact, paid."

¶ 26 Once "the real and personal property [of Mr. Clutts] [we]re sold," the receiver would then be in a position "to close th[e] receivership."

¶ 27 The second fee application, for the period of January 1 through April 30, 2015, indicated that the same team of eight individuals had put in a total of 950.3 additional hours, with a vast majority of those hours (705.7) attributable to a partner billing $520 per hour. The receiver requested a judgment against Mr. Clutts personally in the amount of $464,696.96 in fees and costs.

On June 19, 2015, the court approved the receiver's second report, granted the fee petition, and entered a judgment against Mr. Clutts in the amount requested.

¶ 28    The receivership continued until the receiver filed his third and final report and fee petition on November 1, 2019. The certificates of service for those filings indicated that Mr. Clutts was served by U.S. mail at the Vienna Correctional Center.

¶ 29    In the third report, the receiver stated that he had marketed and readied Mr. Clutts's personal residence for sale, liquidated Mr. Clutts's assets at the residence, "and applied the proceeds to the Estate." The receiver indicated that in the process of selling the house, one deal fell through and that the prospective buyer initiated a lawsuit against the receiver for specific performance of the contract. The parties ultimately reached an agreement, and the receiver sold the property for $582,000, on April 26, 2016, "though netted zero dollars from the sale following payment of all related encumbrances and expenses."

¶ 30    In his final fee application, the receiver explained that his team had nearly doubled to include 15 people, with the vast majority of the 1977.3 hours (1144.1) again attributable to a partner billing from $500 to $535 per hour. The receiver sought final approval of compensation in the amount of $898,248.50 for services rendered and $23,761.19 for expenses incurred over the duration of the receivership (spanning from November 12, 2014, through September 4, 2019), for a total of $922,009.69. Three payments totaling $137,000 had already been made to the receiver in 2015, meaning he was still owed $785,009.69. It is not clear from the record how those three payments were made.

¶ 31    On September 18, 2019, the circuit court granted the motion to approve the receiver's final report and the third and final fee petition.

¶ 32    On November 7, 2019, the receiver filed an affidavit of service indicating that his final

report and fee petition were served at 10:12 a.m. on November 5, 2019, on a deputy "for service on Raymond E. Clutts who is incarcerated at Lake County Jail." A certificate of service for the notice of filing and the affidavit of service indicated that those documents were also served on Mr. Clutts by U.S. mail at a P.O. box in Waukegan.

¶ 33    A November 20, 2019, court order states that the matter was before the court "on receiver's third and final fee application and receiver's motion to approve final report, accounting, and order of discharge, notice proper, the receiver and Raymond Clutts appearing in court, and the court being advised." This court order vacates the order of September 18, 2019 approving the receiver's final report and granting his final fee petition and gives Mr. Clutts 28 days to respond to the receiver's motion to approve his final report and fee petition.

¶ 34    On December 18, 2019, Mr. Clutts filed what he labeled a *pro se* "special and limited appearance" as the "respondent in receivership proceedings" and a motion objecting to personal jurisdiction. Mr. Clutts argued that he had not received notice of the receivership prior to entry of the court's February 5, 2015, judgment against him, and similarly had not received prior notice of Clutts, P.C.'s withdrawal of its appearance on behalf of Mr. Clutts, which was done without his knowledge or authorization. Mr. Clutts argued that the receiver failed to secure personal jurisdiction over him, Clutts, P.C., or SMR, Inc. by failing to serve him personally or as the sole officer and shareholder of those corporate entities. Mr. Clutts further argued that due to the lack of personal jurisdiction over him or the corporations, the judgments entered against him in the "collateral Receivership proceedings" were void *ab initio*.

¶ 35    In a footnote, Mr. Clutts also noted that he had "many well-founded objections" to the conduct of Mr. Levin as the receiver but reserved the right to address those substantive defenses if the court found personal jurisdiction was proper.

¶ 36    In one written order, entered on September 16, 2020, the circuit court granted the final fee petition and denied Mr. Clutts's motion, finding that it had jurisdiction over Mr. Clutts based on his filing of the initial petition for dissolution of marriage and his participation in the subsequent dissolution proceedings. In that order, the court found that "[n]otice of all proceedings upon the Petitioner/Counter-Respondent while he was incarcerated was proper," and said nothing further about notice. The court also found that all actions the receiver took were pursuant to court order and were "necessary and reasonable in light of all facts and circumstances known to the Receiver," and the receiver's actions had benefitted the marital estate. The court also said that "[d]espite being afforded an opportunity to produce the same," Mr. Clutts had failed to offer evidence that the receiver's actions had been the result of negligence or misconduct, or that "the Receiver should not otherwise be entitled to *qualified immunity* from any claims or actions by a party relative to the Receiver's actions or inactions in these proceedings." (Emphasis in original.) The court discharged Mr. Levin from his duties as receiver, granted his fee petition, and entered a judgment against Mr. Clutts for outstanding fees and expenses in the total amount requested by Mr. Levin of $785,009.69.

¶ 37    On October 16, 2020, Mr. Clutts moved for reconsideration and sought leave to conduct discovery and to present various motions to dismiss. Mr. Clutts argued that reconsideration was necessary because his prior motion had only addressed jurisdictional issues, he had reserved the right to raise substantive challenges to the receiver's conduct and requested fees, and "as a matter of due process he [wa]s entitled to conduct discovery" on those matters. Mr. Clutts also argued that Mr. Levin was not entitled to qualified immunity as the receiver because he had engaged in "gross negligence, willful misconduct, fraud, self-dealing and breach of fiduciary duty to the estate."

¶ 38    The same day, October 16, 2020, Mr. Clutts also filed a notice of appeal from the court's order of September 16, 2020 (case No. 1-20-1120).

¶ 39    On January 6, 2021, the circuit court concluded that it had been divested of jurisdiction by Mr. Clutts's filing of the October 16, 2020, notice of appeal and refused to consider any of the arguments raised in Mr. Clutts's motion to reconsider.

¶ 40    Mr. Clutts filed a notice of appeal from the court's January 6, 2021, order on February 3, 2021 (appeal No. 1-21-0107).

¶ 41    On June 15, 2021, this court granted Mr. Clutts's motion to consolidate these two appeals.

¶ 42                                  II. JURISDICTION

¶ 43    Mr. Clutts timely filed a notice of appeal from the circuit court's September 16, 2020, order on October 16, 2021, and from the circuit court's January 6, 2021, order on February 3, 2021. We have jurisdiction over these consolidated appeals pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 44                                  III. ANALYSIS

¶ 45                 A. Failure to Serve Mrs. Clutts With Notice of This Appeal

¶ 46    Before we turn to Mr. Clutts's arguments on appeal, we first address the receiver's argument that this appeal should be dismissed because Mr. Clutts did not serve Mrs. Clutts with the notice of appeal in his second appeal—appeal No. 1-21-0107.

¶ 47    Rule 303(c) requires that "[t]he party filing the notice of appeal *** shall, within 7 days, file a notice of filing with the reviewing court and serve a copy of the notice of appeal upon every other party and upon any other person or officer entitled by law to notice." Ill. S. Ct. R. 303(c) (eff. July 1, 2017). But "[a]n appeal will not be dismissed on the basis that the opposing party was

not served with a copy of the notice of appeal if there was no evidence of prejudice to the party." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A. v. Zwolinski*, 2013 IL App (1st) 120612, ¶ 14. "A party is not prejudiced by the appellant's failure to serve a copy of the notice of appeal on the party if the party could file appellate briefs and argue orally." *Id.*

¶ 48    Here, Mr. Clutts is appealing from the circuit court's denial of his motion to dismiss for a lack of personal jurisdiction and its granting of the receiver's final fee petition. Mrs. Clutts, though she requested the appointment of the receiver in the first place, was not an active participant with respect to those filings. Moreover, although Mrs. Clutts was not served with the notice of the second appeal in case No. 1-21-0107, she was served with the notice of the first appeal in case No. 1-20-1120. Because Mrs. Clutts received notice of Mr. Clutts's intent to appeal from the court's September 16, 2020, order which approved the final fee petition and rejected Mr. Clutts's jurisdictional arguments, she was not prejudiced by Mr. Clutts's failure to serve her with the notice of appeal in case No. 1-21-0107, and we will not dismiss this appeal on that basis. We will now address the arguments raised on appeal.

¶ 49                    B. Jurisdiction Over Mr. Clutts and the Corporations

¶ 50                    1. The court had jurisdiction over Mr. Clutts

¶ 51    Mr. Clutts argues that the circuit court did not have personal jurisdiction over his person in what he calls the "collateral Receivership proceedings" because he was not served with process. "[P]ersonal jurisdiction is derived from the actions of the person sought to be bound." (Internal quotation marks omitted.) *In re Luis R.*, 239 Ill. 2d 295, 305 (2010). It "may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction." *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18. A petitioner "submits to the jurisdiction of the court by filing a petition or

complaint." *Luis R.*, 239 Ill. 2d at 305. We review *de novo* the question of whether a court had jurisdiction over the parties. *Mitchell*, 2014 IL 116311, ¶ 17.

¶ 52    Here, it is clear the circuit court had personal jurisdiction over Mr. Clutts by virtue of Mr. Clutts having filed the initial divorce complaint. A circuit court in a divorce proceeding has jurisdiction over the parties involved. *In re Marriage of Schweihs*, 222 Ill. App. 3d 887, 890 (1991). Thus, in filing the complaint, Mr. Clutts submitted himself to the jurisdiction of the court. *Luis R.*, 239 Ill. 2d at 305.

¶ 53    Mr. Clutts does not deny this, but instead argues that the circuit court lacked personal jurisdiction on the basis that the receivership was a separate proceeding that was distinct from the divorce proceedings, requiring a separate submission to personal jurisdiction. In support of this argument, Mr. Clutts relies on *In re Marriage of Lenhardt*, 176 Ill. App. 3d 429 (1988), but that case does not support his premise. In *Lenhardt*, the court found that a proceeding for an order of protection under the Illinois Domestic Violence Act of 1986 (see 750 ILCS 60/101 *et seq.* (West 2020)) was indeed "separate and distinct" from the divorce proceeding. *Lenhardt*, 176 Ill. App. 3d at 432. But, crucially, the order of protection proceeding was initiated under a separate statute from the divorce proceedings, the Domestic Violence Act, which enumerates its own service of process provisions that make clear "[a]ny action for an order of protection *** is a distinct cause of action and requires that a separate summons be issued and served." 750 ILCS 60/210 (West 2020); see also Ill. Rev. Stat. 1987, ch. 40, ¶¶ 2312-10(a).

¶ 54    No such statutory requirement applies to the receivership petition that Mrs. Clutts filed as part of the dissolution proceeding that Mr. Clutts himself had initiated. Her stated purpose for filing the receivership petition was to ensure that the parties' marriage settlement agreement was enforced. And in dissolution proceedings, "a trial court retains indefinite jurisdiction to enforce

the terms of a judgment." *In re Marriage of Hall*, 404 Ill. App. 3d 160, 164 (2010). Because the circuit court retained jurisdiction to enforce the dissolution judgment, and Mrs. Clutts's petition to appoint a receiver was filed for the purpose of enforcing that judgment, the court had personal jurisdiction over Mr. Clutts.

¶ 55    2. Clutts, P.C., and SMR, Inc. Were Necessary Parties to Receivership Proceedings

¶ 56    Mr. Clutts also argues that the circuit court lacked personal jurisdiction over the corporations he established, Clutts, P.C., and SMR, Inc., because those separate legal entities were never served with process or made parties to this proceeding.

¶ 57    "A corporation is a legal entity that exists separate and distinct from its shareholders and officers, even if the corporation consists of only one or two shareholders." *Pro Sapiens LLC v. Indeck Power Equipment Co.*, 2019 IL App (1st) 182019, ¶ 62. Thus, Mr. Clutts is correct that jurisdiction over him is not equivalent to jurisdiction over the corporations. However, at the time he filed his motion, Mr. Clutts was no longer in a position to assert a challenge to the court's jurisdiction on behalf of Clutts, P.C., or SMR, Inc.

¶ 58    It is well settled in Illinois that "a corporation must be represented by counsel in legal proceedings." *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 22. In addition, the appearance of an officer of the corporation "in his personal capacity" does not constitute the appearance of the corporation "as there is no authorization for a corporation to appear in any proceeding in any court through an agent who is not a licensed attorney." (Internal quotation marks omitted.) *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 807 (1985). Here, Mr. Clutts contested the circuit court's personal jurisdiction over the two corporations in his motion filed on December 18, 2019, when, as he acknowledges in his opening brief, he was no longer an attorney, having been disbarred "on consent" in September 2017. Mr. Clutts was

therefore not entitled to make arguments as a legal representative of the corporations.

¶ 59    This does not mean, however, that Mr. Clutts could not raise the absence of the corporations as necessary parties to the receivership proceedings. "The general equitable rule is that all persons possessing a substantial legal or beneficial interest in the matter being litigated and who will be affected by the decree must be made parties." *St. Clair County Housing Authority v. Southwestern Bell Telephone Co.*, 387 Ill. 180, 185 (1944). The failure to join a necessary party is an issue that may be raised at any time, either by the parties or the trial court or appellate court *sua sponte* and an order entered without jurisdiction over a necessary party will be void. *Certain Underwriters at Lloyd's London v. Burlington Ins. Co.*, 2015 IL App (1st) 141408, ¶ 15.

¶ 60    Here, it seems clear that both Clutts, P.C., and SMR, Inc., had a substantial legal interest in having a receivership placed upon them, particularly in light of the receiver's aim to liquidate the corporations. See *Glickauf v. Moss*, 23 Ill. App. 3d 679, 682 (1974) (noting that it "is indeed difficult to imagine a more necessary party in an action for corporate dissolution than the affected corporation itself.").

¶ 61    We are unconvinced by the receiver's argument that the circuit court had jurisdiction over the corporations by virtue of *in rem* or *quasi in rem* jurisdiction. It is true that a receivership is generally an *in rem* proceeding. *People ex rel. White v. Travnick*, 346 Ill. App. 3d 1053, 1061 (2004). "An action in rem is a proceeding that takes no cognizance of owner but determines right in specific property against all of the world, equally binding on everyone. *** In a strict sense of the term, a proceeding *in rem* is one which is taken directly against property or one which is brought to enforce a right in the thing itself." (Internal quotation marks omitted.) *In re Commissioner of Banks and Real Estate*, 327 Ill. App. 3d 441, 465 (2001). The receiver argues that this means there was no need to serve the corporations and, presumably, no reason to join

them as parties. But the case on which he relies in support of this argument involved the liquidation of property. *Id.* Here, the circuit court did not simply appoint a receiver over certain tangible or real property. Instead, she appointed a receiver over two corporations, legal entities with their own rights. We thus find the receiver's argument regarding *in rem* proceedings inapplicable.

¶ 62    It is unclear from the record why the circuit court decided it was unnecessary for the corporations in this case to be served separately. If, as the receiver contends, the distinction between Mr. Clutts and his corporations is a legal fiction, then service would not be required. See *Gass v. Anna Hospital Corp.*, 392 Ill. App. 3d 179, 186 (2009) (noting that a decision to disregard the corporate entity, or pierce the corporate veil, will only be made where there has been "a substantial showing that *** there is such a unity of interest and ownership that the separate personalities of the corporations no longer exist"). But this would have required a factual determination that the circuit court never made. See *Bankers Trust Co. v. Chicago Title & Trust Co.*, 89 Ill. App. 3d 1014, 1019 (1980) (listing some of the "factual bases upon which corporate existence has been disregarded"); see also *Gass*, 392 Ill. App. 3d at 186 (listing 11 separate factors to be considered in deciding whether to disregard a corporate entity). Because the corporations were never served and because there was no factual finding that would justify ignoring their corporate existence, we agree with Mr. Clutts that it was necessary that they be made parties before a receiver was appointed.

¶ 63    Although Mr. Clutts did not raise this as a failure to name a necessary party, his arguments are easily understood as making this point. In any event, we as the appellate court have the power to raise this as an issue. *Certain Underwriters*, 2015 IL App (1st) 141408, ¶ 15. However, we cannot ignore the fact that this was not raised in the circuit court at a time that the corporations might have been made parties or a finding might have been made that the corporate veil should be

pierced. As we have recognized:

> "when an objection to the nonjoinder of a necessary party is first raised *after* judgment, it will be rejected unless the absent party was deprived of material rights without being heard or the absent party's interests in the litigation are so interconnected with the named parties' interests that the presence of the absent party is absolutely necessary." (Emphasis in original.) *State Farm Mutual Automobile Insurance Co. v. Haskins*, 215 Ill. App. 3d 242, 245 (1991).

¶ 64 Because this inquiry into the impact of the failure to name the corporations raises factual issues that have not been directly addressed by the parties, this determination is better made by the circuit court on remand. Thus, we remand to the circuit court to consider in the first instance whether the failure to serve either Clutts, P.C., or SMR, Inc., and make them parties to this case voids the receivership in its entirety. In the event the circuit court finds that the absence of these corporations as parties does not void the receivership, there are other issues that have been briefed by the parties that will clearly arise on remand. We will address these now in an attempt to expedite a prompt resolution of this unfortunate matter.

¶ 65                                 C. Other Issues on Remand

¶ 66                                     1. Lack of notice

¶ 67 Mr. Clutts also argues on appeal that the circuit court lacked "jurisdiction" because he did not receive proper notice of the November 14, 2014, hearing or the February 5, 2015, hearing when the first fee petition was approved. He argues that he was entitled to discovery regarding whether the receiver directed Ken Merlino to refrain from notifying or contacting Mr. Clutts to apprise him of the pending November 14, 2014, and February 5, 2015, motions.

¶ 68 Mr. Clutts's arguments confuse personal jurisdiction and notice. Any order entered by a

court without personal jurisdiction is void (*Mitchell*, 2014 IL 116311, ¶ 17), but "[o]nce a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law" (*In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998)). As we have already concluded, the circuit court in this case had personal jurisdiction over Mr. Clutts by virtue of his filing the initial petition for the dissolution of his marriage.

¶ 69 However, Mr. Clutts's arguments raise serious issues surrounding his right to procedural due process through notice and a right to be heard prior to the court imposing this drastic remedy. "Procedural due process concerns the constitutional adequacy of the specific procedures employed to deny a person's life, liberty, or property interests." *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 31. "The fundamental requirement of due process is the opportunity to be heard, and that right 'has little reality or worth unless one is informed that the matter is pending.' " *Mitchell*, 2014 IL 116311, ¶ 28 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). We review the legal question of whether a party's right to due process was denied *de novo*. *Heelan*, 2015 IL 118170, ¶ 31.

¶ 70 There are two different periods at issue regarding the notice provided to Mr. Clutts. The first is the period during which Clutts, P.C., had an appearance on file for Mr. Clutts and during which the receiver acknowledges that he did not serve Mr. Clutts personally. This was certainly true as of the November 14, 2014, hearing and appears to have remained true until the receiver provided proof of service on Mr. Clutts personally in the Lake County jail on January 26, 2015, of the motion to withdraw, his first report, and his first fee petition.

¶ 71 If Mr. Clutts had no notice of the proceedings surrounding the appointment of the receiver, then he had no opportunity to object to the appointment, the circuit court's decision not to follow

Rule 776, the decision that he should be responsible for the receiver's fees, the activities the receiver engaged in, the fees charged, or the expansion of the receiver's powers and so on. "It is when the failure to serve notice prevents a party from appearing and denies the party an opportunity to be heard or to respond, thereby denying a party's procedural due process rights, that an *ex parte* order entered without notice may be deemed null and void." (Internal quotation marks omitted.) *Godfrey Healthcare & Rehabilitation Center, LLC v. Toigo*, 2019 IL App (5th) 170473, ¶ 46. "The determining factor is not the absence of notice but whether there was any harm or prejudice to the nonmoving party." (Internal quotation marks omitted.) *Id.* It appears obvious that there was prejudice here, but the question is when Mr. Clutts received notice.

¶ 72    The receiver argues that Mr. Clutts had notice throughout. The notice of Mrs. Clutts's motion for November 14, 2014, is not in the record but the court order indicates that Mr. Merlino of Clutts, P.C., was present. The receiver argues, citing *Eckel v. Bynum*, 240 Ill. App. 3d 867 (1992), that notice to an attorney is notice to the client, regardless of whether the attorney confers the information. However, as the *Eckel* decision makes clear, "the determinative question" in applying this principle is whether the attorney who had notice was in fact Mr. Clutts's attorney at that time. *Id.* at 875.

¶ 73    At the November 14, 2014, hearing, the following occurred: (1) a receiver was appointed to take charge of Clutts, P.C., the law firm representing Mr. Clutts *at that hearing*, (2) Mr. Merlino, the Clutts, P.C., attorney ostensibly representing Mr. Clutts at that hearing orally asked to withdraw his representation of Mr. Clutts, and (3) the court noted in its order that Mr. Merlino "refrain[ed] from legal argument." This certainly offers some support for Mr. Clutts's claim that, as a result of the receivership appointment, Mr. Merlino and Clutts, P.C., were not representing Mr. Clutts at that hearing. We agree with Mr. Clutts that he was entitled to discovery on this issue.

¶ 74    There also appears to be some disagreement between the parties as to when exactly the receiver began to serve Mr. Clutts in the Lake County jail. From that point on, of course he was on notice and it was up to him to secure representation, if necessary, and make any objections he had known. The circuit court found that notice on Mr. Clutts while he was incarcerated was proper but does not appear to have made a determination as to when that notice first occurred. That too should be sorted out on remand.

¶ 75    After the court on remand determines at what point Mr. Clutts got notice it will be up to the court to adjust the receiver's fee petition accordingly. To the extent that the receiver was allowed to accrue fees and costs chargeable to Mr. Clutts without notice to him, such actions must be deemed null and void as a denial of due process. *Godfrey Healthcare*, 2019 IL App (5th) 170473, ¶ 46; *In re Estate of Gustafson*, 268 Ill. App. 3d 404, 409 (1994).

¶ 76                              2. Other objections to the fee petition

¶ 77    In the event that the receivership remains in place, despite the failure to serve the corporations and to the extent that the receiver seeks fees after the period that Mr. Clutts had notice, the court must allow Mr. Clutts an opportunity to make his substantive objections to the amount of that petition and consider any reasonable request for discovery.

¶ 78    The receiver contends that Mr. Clutts has waived his right to make these objections by failing to make them in his initial response to the receiver's final fee petition. We reject that argument.

¶ 79    Mr. Clutts's initial response to the final fee petition was a motion to file a "special and limited appearance" in the "receivership proceedings" to contest personal jurisdiction. The limited appearance that Mr. Clutts asked to file was the correct procedure for raising an objection to personal jurisdiction and it precluded him from making any substantive objections to the receiver's

final fee petition.

¶ 80 Section 2-301 of the Code, which governs the procedure for such objections, provides:

"(a) Prior to the filing of any other pleading or motion other than as set forth in subsection (a-6), a party may object to the court's jurisdiction over the party's person, either on the ground that the party is not amenable to process of a court of this State or on the ground of insufficiency of process or insufficiency of service of process, by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding or by filing a motion to quash service of process. ***

***

(a-6) A party filing *any other pleading or motion* prior to the filing of a motion objecting to the court's jurisdiction over the party's person as set forth in subsection (a) waives all objections to the court's jurisdiction over the party's person prospectively, unless the initial motion filed is one of the following:

(1) A motion for an extension of time to answer or otherwise plead.

(2) A motion filed under Section 2-1301, 2-1401, or 2-1401.1." (Emphasis added). 735 ILCS 5/2-301 (West 2014).

¶ 81 As section 2-301 makes clear, because Mr. Clutts objected to personal jurisdiction, he could not file *any other motion* without waiving this objection. Moreover, section 2-301 goes on to provide that "[a] decision adverse to the objector *does not preclude* the objector from making any motion or defense which he or she might otherwise have made." (Emphasis added.) *Id.* § 2-301(b). Mr. Clutts specifically reserved the right to address his "many well-founded objections" and substantive defenses to the conduct of the receiver if the court found personal jurisdiction was proper. But instead of giving Mr. Clutts the opportunity to be heard on those

substantive objections, the court ruled on the receiver's final fee petition in the same September 16, 2020, order in which it found jurisdiction was proper.

¶ 82    In this instance, one proper procedure would have been for the circuit court to rule on Mr. Clutts's motion contesting personal jurisdiction, then, if it found that it had jurisdiction, proceed to hear Mr. Clutts's objections to the fee petition, and *then* rule on that petition. See *ETA Trust v. Recht*, 214 Ill. App. 3d 827, 831 (1991) (stating that the circuit court "should have either granted defendant's motion to quash service and then not proceeded with a hearing on the substantive matters or *** should have denied the motion to quash service and then proceeded to hear defendant's objections ***.").

¶ 83    Alternatively, the circuit court could have considered the objections raised in Mr. Clutts's motion to reconsider. The circuit court was simply wrong in concluding that because Mr. Clutts had already filed a timely notice of appeal from the court's September 16, 2020, order, it had lost jurisdiction to do so. To the contrary, Illinois Supreme Court Rule 303(b) (eff. July 1, 2017) provides that "[w]hen a timely postjudgment motion has been filed by any party *** a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion *** becomes effective when the order disposing of said motion or claim is entered." Thus, the filing of a notice of appeal did not deprive the circuit court of jurisdiction to consider Mr. Clutts's timely filed post-judgment motion.

¶ 84    As this order suggests, this court has serious concerns about what happened in this case. Surely, the circuit court acted properly in attempting to protect the clients of Clutts, P.C. But Rule 776 (eff. Mar. 25, 1991) allows a court to impose a receivership to wind down a law firm. Under that rule, the receiver is generally not compensated and in "extraordinary" cases where the court determines that compensation is to be paid, it is paid out of the supreme court disciplinary fund or

another fund designated by the supreme court. While the circuit court was also properly attempting to protect Mr. Clutts's wife and children, because of the procedure employed it appears that they are now in competition with the receiver for Mr. Clutts's limited resources. The parties are strongly encouraged to work to settle this matter on remand.

¶ 85                                    IV. CONCLUSION

¶ 86    For the foregoing reasons, we remand to the circuit court to determine in the first instance if the failure to serve Clutts, P.C., and SMR, Inc., as necessary parties to the receivership proceedings requires that all orders regarding that receivership be vacated. If the receivership remains in place on remand, the court should determine at what point Mr. Clutts got notice of the proceeding and deny any fees or costs sought in the final fee petition for services provided prior to that time. Finally, in reference to the remaining fees and costs sought by the receiver, the circuit court must consider any substantive objections that Mr. Clutts has to the fees and expenses sought by the receiver and also consider his request for discovery.

¶ 87    Reversed and remanded, with directions.